IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| WILBERT ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:05cv791-MHT |
| | ) | (WO) |
| CITY OF MONTGOMERY, | ) | |
| | ) | |
| Defendant. | ) | |


OPINION AND ORDER

Plaintiff Wilbert Ellis brought this 42 U.S.C. § 1983
action against defendant City of Montgomery, Alabama,
claiming that his right to procedural due process under
the Fourteenth Amendment was violated when the city
failed to provide him with notice before demolishing his
house.  After denying the parties' cross-motions for
summary judgment, the court heard this matter in a non-
jury trial conducted on November 3, 2006.  Based on the
evidence presented, the court entered judgment in favor

of Ellis.   <u>Ellis v. City of Montgomery</u>, 460 F.Supp.2d 1301 (M.D. Ala. 2006) (Thompson, J.).

This cause is now before the court on Ellis's motion for attorney's fees in the amount of $ 24,548.25.[1]   For the reasons that follow, the motion will be granted to the extent that Ellis is entitled to recover $ 12,994.50.

## I. LEGAL STANDARD FOR ATTORNEY'S FEES

In federal civil-rights litigation, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."   42 U.S.C. § 1988(b); <u>see also</u> <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of</u> <u>Health & Human Res.</u>, 532 U.S. 598 (2001) (statutory fee-shifting provisions from different statutes have been

---

1.   In Ellis's application for attorney's fees, he seeks $ 25,023.45, including $ 475.20 in costs.   Because the clerk of the court has already taxed costs in that amount without objection pursuant to Federal Rule of Civil Procedure 54(d)(1), those costs are recoverable without further order of the court.   The court therefore subtracts costs from Ellis's fee request.

interpreted consistently).  "Determining a plaintiff's
entitlement to attorney fees entails a three-step
process.  First, a court asks if the plaintiff has
'prevailed' in the statutory sense.  Second, the court
calculates the 'lodestar,' which is the number of hours
(tempered by billing judgment) spent in the legal work on
the case, multiplied by a reasonable market rate in the
local area.  Finally, the court has the opportunity to
adjust the lodestar to account for other considerations
that have not yet figured in the computation, the most
important being the relation of the results obtained to
the work done."  <u>Dillard v. City of Greensboro</u>, 213 F.3d
1347, 1353 (11th Cir. 2000) (citations omitted).

     The fee applicant bears the burden of "establishing
entitlement and documenting the appropriate hours and
hourly rates."  <u>Norman v. Hous. Auth. of Montgomery</u>, 836
F.2d 1292, 1303 (11th Cir. 1988).  This burden includes
supplying the court with specific and detailed evidence
from which it can determine the reasonable hourly rate,

maintaining records to show the time spent on the different claims, and setting out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity. ACLU v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999).

A fee applicant should also exercise "'billing judgment,'" id. at 428 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). That is, the applicant should "exclude from his fee applications 'excessive, redundant, or otherwise unnecessary [hours],' which are hours 'that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation, or experience of counsel.'" Id. (quoting Norman, 836 F.2d at 1301) (citation omitted).

"Those opposing fee applications have obligations, too. In order for [district] courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must

4

be specific and 'reasonably precise.'" <u>Id</u>. (quoting <u>Norman</u>, 836 F.2d at 1301).

In making the above determinations, the court is guided by the twelve factors set out in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), and approved in <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 91-92 (1989). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

## II. DISCUSSION

In this case, there is no question that Ellis is the prevailing party: the court held that the city, in demolishing his house without providing adequate notice, deprived of him of property without due process of law in violation of the Fourteenth Amendment. <u>Ellis</u>, 460 F.Supp.2d at 1314. As such, Ellis is entitled to be reimbursed for reasonable fees and expenses, <u>id</u>., and the city does not argue otherwise.

The critical question is whether Ellis is entitled to the entire attorney's fee he seeks. Ellis has submitted an itemized billing statement for work done by his attorney and paralegal. The $ 24,548.25 Ellis seeks can be broken down as follows:

|  | Hours | Rate | Adjustment | Subtotal |
|---|---|---|---|---|
| Attorney Nelms | 61.82 | $ 250 | x 1.5 | $ 23,182.50 |
| Paralegal Simon | 18.21 | $  75 | -- | $ 1,365.75 |
| TOTAL | 80.03 |  | -- | $ 24,548.25 |

6

The city objects to the amount requested and asks the court to award less.  The court will begin with the city's objections to the number of hours reasonably expended.  Next, the court will consider the reasonable hourly rate.  Lastly, the court will determine whether the fee should be adjusted upward or downward.

### A. Number of Hours

The first component of the lodestar figure is the number of hours reasonably expended.  To determine this number, the court relies primarily on the first <u>Johnson</u> factor, the amount of time and labor required.  The city has lodged numerous objections to the number of hours billed.

First, the city objects to those hours charged prior to filing the lawsuit, arguing that they were not reasonably necessary because the city never rejected Ellis's claim before the lawsuit was filed and in fact

tried to negotiate a settlement. "Where the factual record supports a finding that the plaintiff filed or maintained a suit unnecessarily, a district court may properly consider such a finding in setting the amount of attorney's fees." <u>Ass'n of Disabled Veterans v. Neptune Designs, Inc.</u>, 469 F.3d 1357, 1360 (11th Cir. 2006). The court rejects the city's argument because the record does not support a finding that Ellis filed suit unnecessarily. In fact, Ellis's billing statement indicates that he filed suit after receiving what appears to be a settlement offer from the city (which he evidently found unacceptable). The court finds that these hours were reasonably expended.

The city also objects to time charged for drafting a notice of claim against the city because no notice of claim is required in order to file a § 1983 lawsuit. The court rejects this argument as well; even if a notice of claim is not legally required, it may have been prepared in an ultimately unsuccessful effort to obtain a

favorable settlement. In fact, it is difficult to reconcile the city's previous argument that attorney's fees should be reduced because Ellis did not engage in enough good-faith settlement negotiations with its argument here that fees should be reduced because a notice of claim was not statutorily required. This time was reasonably expended.

Next, the city objects to time charged for drafting a motion to file an out-of-time response to the city's motion for summary judgment. In that motion, Ellis's counsel explained that due to a calendaring error he had missed the deadline. The court agrees with the city's objection: counsel should have exercised 'billing judgment' and not charged this time. Therefore, this time (0.25 hours) will be subtracted from attorney Nelms's billing hours.

The city also objects to time charged for correspondence regarding discovery responses. The court does not understand why the city thinks these hours

9

should not be charged, and the court declines to reduce these hours.

Next, the city objects to time charged for various "unnecessary documents," such as settlement negotiation, deposition notices, and a motion to continue. The motion to continue was filed because Ellis's counsel had a conflict with a deposition in another case. The court agrees that counsel should have exercised 'billing judgment' and not charged this time. However, the city does not explain why the other documents and the time spent preparing them were unnecessary, and the court finds that those hours were reasonably expended. Therefore, only the time spent preparing the motion to continue will be subtracted from Ellis's billing hours. This item consists of 0.58 hours for attorney Nelms and 0.25 hours for paralegal Simon.

Next, the city objects to the amount of time Ellis's counsel has charged for mediation, a pretrial conference, and trial. Plaintiff's counsel is entitled to bill for

reasonable time spent in transportation, arriving slightly early, and doing work related to the compensable appointment before and after it takes place. With regard to mediation, the city argues that Ellis should have billed less time for this event. However, absent any evidence in support of the city's argument, the court has no basis for deciding that the number of hours Ellis billed was unreasonable. (The court also notes that the dispute over the number of mediation hours may arise from the fact, which the city may have overlooked, that there were actually two separate mediation events: a pre-mediation conference call, and a mediation conference.) Furthermore, two hours for the pretrial conference and four hours for the trial are reasonable. The court therefore declines to reduce these hours.

The city also objects to the amount of time charged for drafting a consent to adjudication by a magistrate judge and answers to discovery. According to the city, it should not have taken Ellis's counsel 15 minutes for

11

the consent form and two hours for the discovery answers. The court disagrees that this amount of time is unreasonable and declines to reduce these hours.

Lastly, the city objects to those hours charged for paralegal support for tasks not "traditionally done by an attorney." <u>Black v. M.G.A., Inc.</u>, 51 F.Supp.2d 1315, 1324 (M.D. Ala. 1999) (Thompson, J.). The court agrees with the city that certain hours charged for paralegal Simon's work are clerical in nature and therefore noncompensable. They are "tasks which should be included in the 'routine office overhead normally absorbed by the practicing attorney.'" <u>Reynolds v. Ala. Dep't of Transp.</u>, 926 F. Supp. 1448, 1456 (M.D. Ala. 1995) (Thompson, J.) (quoting <u>Dowdell v. City of Apopka</u>, 698 F.2d 1181, 1192 (11th Cir. 1983)). The court has reviewed Ellis's itemized invoice and has determined that Simon's compensable hours should be reduced by 7.34 hours.

In sum, the court will reduce the number of hours billed by attorney Nelms by 0.83 (0.25 + 0.58) hours for

12

billing judgment.  His total number of hours is therefore 60.99.  The court will also reduce the number of hours billed by paralegal Simon by 7.59 (0.25 + 7.34) hours for clerical tasks and billing judgment.  Her total number of hours is therefore 10.62.

## B. Hourly Rate

The second component of the lodestar is the reasonable hourly rate for work performed by similarly situated attorneys in the community.  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  Norman, 836 F.2d at 1299.  To determine this rate, the court relies primarily on the following Johnson factors: the skill required to perform the legal services properly; the customary fee in the community; and the experience, reputation, and ability of the attorney.

13

Ellis seeks a rate of $ 250 per hour for attorney Nelms and $ 75 per hour for paralegal Simon. He has filed an affidavit by Jimmy Jacobs, a local attorney with experience litigating civil-rights cases, who avers that the current prevailing market rate for attorneys with Nelms's skill, reputation, and experience is between $ 200 and $ 350 per hour. The city argues that a more reasonable fee is between $ 120 and $ 150 per hour. The city notes that when it employs outside counsel, it pays between $ 90 and $ 120 per hour.

The court concludes that a reasonable rate for attorney Nelms in this case is $ 200 per hour. This rate falls within the range for attorneys in the local community with Nelms's skill, reputation, and experience, but also takes into account the fact that this case was neither complex nor demanding of extraordinary legal skill. The case required that Nelms conduct relatively basic legal research, draft pleadings and briefs that took into consideration the basic elements of and

defenses to § 1983 actions against a municipality, and elicit information regarding such during depositions and at trial.  This court has awarded attorney's fees in many cases involving legally and factually complex scenarios and issues, e.g. Reynolds, 926 F. Supp. 1448, and this case is not one of those.  Therefore, a $ 200 hourly rate adequately captures the second component of the lodestar calculation.

This court has previously stated that $ 75 per hour is "the rate commonly awarded paralegals by this court." Hall v. Lowder Realty Co., 263 F.Supp.2d 1352, 1369 (M.D. Ala. 2003) (Thompson, J.).  The city argues that a rate not to exceed $ 50 is more consistent with "the limited issue and limited parties" of this litigation.  This court believes that the city's argument about the limited scope of this litigation is more powerful in the context of a reasonable rate for attorney Nelms than for paralegal Simon.  Excluding noncompensable clerical tasks, Simon's billing entries reflect a number of tasks

15

that genuinely require legal skills regardless of whether
the litigation is simple or complex.   Therefore, the
courts accepts the plaintiff's billing rate of $ 75 for
paralegal work.


## C. Adjustments

The court now "has the opportunity to adjust the
lodestar to account for other considerations that have
not yet figured in the computation, the most important
being the relation of the results obtained to the work
done." Dillard, 213 F.3d at 1353.   The court will also
consider the other Johnson factors that were not made a
part of the lodestar calculation in this case.   Ellis
seeks to enhance the lodestar figure by a multiplier of
1.5.   The city, by contrast, asks the court to reduce the
fee by two-thirds.

16

1.

The court begins with Ellis's argument for an upward adjustment.  He offers facts related to two different Johnson factors in support of the adjustment.  First, because plaintiff's counsel accepted this case on a contingent-fee basis, he took a significant risk of litigating the entire case without any compensation.  See Yates v. Mobile County Personnel Bd., 719 F.2d 1530, 1533 (11th Cir. 1983) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.").  Second, this was an "undesirable case" because it was civil rights litigation against the municipality.  See Stokes v. City of Montgomery, 706 F.Supp. 811, 815 (M.D. Ala. 1988) (Thompson, J.) (civil rights litigation stigmatizes attorneys and deters high-paying commercial clients).

The court credits these arguments to the extent that they do offer plausible reasons to enhance the lodestar

17

figure.   In <u>Pennsylvania v. Delaware Valley Citizens Council for Clean Air</u>, 483 U.S. 711 (1987), a majority of the Supreme Court agreed that contingency could be a basis for enhancement in certain cases.   However, "[i]n what has become the accepted guideline for determining when lodestar contingency enhancement is permissible under § 1988, Justice O'Connor ... concluded in a separate concurring opinion that enhancement should not be authorized unless the prevailing party adduces affirmative evidence to show: (1) that it would have faced substantial difficulty in locating counsel in the relevant market without a contingency multiplier; and, (2) not that the legal risks of the particular case warrant enhancement, but instead that the rate of compensation for 'contingent fee cases as a class' in the relevant market was different from cases in which payment was certain.   The party seeking attorney fees based on contingency bears the burden of proof under this two part test, and whether the evidence advanced by that party

satisfies the burden is a determination of fact." <u>Martin v. Univ. of S. Alabama</u>, 911 F.2d 604, 611 (11th Cir. 1990) (quoting <u>Delaware Valley</u>, 483 U.S. at 731 (O'Connor, J., concurring)) (footnotes omitted).  Here, Ellis has not met that burden: he has not presented affirmative evidence in support of Justice O'Connor's two-part test.

As for Ellis's argument that this was an undesirable case, that is not a particularly compelling argument here because Ellis's claim involved his personal property right in real estate, the vindication of which tends to be more popular than more traditional civil-rights cases involving discrimination based on race and sex.  Although Ellis notes that challenges to municipal action were particularly unpopular in the aftermath of the September 11 terrorist attacks, this case has nothing to do with national security, protection from terrorists, or emergency preparedness.

The court must also consider Ellis's arguments for enhancement in light of the United States Supreme Court's warning that an upward adjustment to the lodestar is justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was exceptional." Blum v. Stenson, 465 U.S. 886, 899 (1984); see also Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). Ellis's counsel performed adequately in this case, and Ellis achieved a desired result: compensation for his destroyed property. However, the record does not reflect that counsel's performance was "superior" or that his success was "exceptional." Rather, this was a case where the plaintiff was wrongfully deprived of his property and the court's judgment made him whole.

2.

The court will now address the city's arguments in favor of a downward adjustment.  According to the city, the court should reduce recovery by two-thirds to reflect the discrepancy between Ellis's original complaint and the results obtained.[2]  See Dillard, 213 F.3d at 1353 (court must also consider "the relation of the results obtained to the work done").  Farrar v. Hobby, 506 U.S. 103 (1992), is particularly instructive.  Where a plaintiff's purpose is the recovery of damages, Justice Thomas admonished in the plurality opinion, "a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."  506 U.S. at 114.  And where the amount and nature of damages awarded are small in comparison to what the plaintiff sought, "the court

_____

2. As a matter of arithmetic, it is irrelevant whether the two-thirds reduction requested applies to the number of hours calculated for the lodestar figure or a downward adjustment to the total fee after the lodestar is calculated.

may lawfully award low fees or no fees." Id. at 115.  In

a concurring opinion, Justice O'Connor suggested three

factors that courts should consider in making the

assessment: (1) the difference between the amount

recovered and the relief sought; (2) "the significance of

the legal issue on which the plaintiff claims to have

prevailed"; and (3) whether the litigation accomplished

a "public goal."   Id. at 121-22 (O'Connor, J.,

concurring).

Consideration of the first Farrar factor indicates

that Ellis's success was partial.  He initially sought an

injunction plus $ 100,000 in damages, but he recovered

only $ 9,000 plus cancellation of the city's lien for the

cost of demolishing his house.  Ellis, 460 F.Supp.2d at

1314.  However, "success in a civil rights case 'cannot

be valued solely in monetary terms.'  Furthermore, when

determining the degree of success obtained by a civil

rights plaintiff, a court must be careful not to place

'undue emphasis on the modest money damages that were

22

found....'" <u>Villano v. City of Boynton Beach</u>, 254 F.3d 1302, 1306 (11th Cir. 2001) (quoting <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 574 (1986) and <u>Williams v. Thomas</u>, 692 F.2d 1032, 1038 (5th Cir. 1982)).

The second and third <u>Farrar</u> factors weigh more in favor of Ellis.  The second factor favors Ellis because he was completely successful in prevailing on his central legal claim: that the city acted unlawfully in demolishing his house without adequate notice.  <u>Ellis</u>, 460 F.Supp.2d at 1314.  The third factor also favors Ellis because the court found that the deprivation of Ellis's due-process right was caused by a policy or custom.  <u>Id</u>. at 1312.  In denying injunctive relief, this court expressed confidence "that the city, in reading this opinion, has every incentive to devise notice procedures compliant with due process."  <u>Id</u>. at 1314. The litigation arguably accomplished the public goal of discouraging constitutional violations of the sort the city committed in this case.

**3.**

Having considered the arguments of Ellis and the city for upward and downward adjustments in light of <u>Delaware Valley</u>, <u>Blum</u>, <u>Farrar</u>, <u>Dillard</u>, and the <u>Johnson</u> factors, the court declines to make any adjustment to the lodestar amount.  Ellis's arguments regarding the undesirability of the case and the risk involved in contingent-fee arrangements are not particularly compelling in this case, and this case is not so rare or exceptional as to justify an upward adjustment beyond the lodestar figure. And although Ellis did not achieve all that he sought, he prevailed on his central claim that the city unlawfully destroyed his property and he was awarded compensatory damages.  The court is therefore of the opinion that the city should pay neither more nor less than the lodestar.

## III. CONCLUSION

For the foregoing reasons, Ellis is entitled to a fee award as follows:

|  | Hours | Rate | Subtotal |
|---|---|---|---|
| Attorney Nelms | 60.99 | $ 200 | $ 12,198.00 |
| Paralegal Simon | 10.62 | $  75 | 796.50 |
| TOTAL | 71.61 |  | $ 12,994.50 |

Accordingly, it is ORDERED that plaintiff Wilbert Ellis's motion for attorney's fees (doc. no. 47) is granted to the extent that plaintiff Ellis shall have and recover from defendant City of Montgomery attorney's fees in the amount of $ 12,994.50.

DONE, this the 9th day of July, 2007.

　　　　　　　　　　　/s/ Myron H. Thompson
　　　　　　　　　UNITED STATES DISTRICT JUDGE